ON REMAND FROM THE SUPREME COURT
SCHOTT, Judge.
This case was remanded to this court by the Supreme Court for the assessment of damages. 507 So.2d 809 (La.1987).
Shawn M. Toups, the victim, was born on September 26, 1974; the accident, a fire in a utility room, occurred on August 17, 1977; and the case was tried in March, 1983. Shawn suffered extensive first, second and third degree burns on his face, arms, and legs. He was taken to the burn unit at Charity Hospital in New Orleans where he was treated in Bum ICU for thirty-six days and in the general intensive care ward for an additional fifty days. In March, 1978 he was placed under the care of Dr. Randolph Howes, a plastic surgeon, and continued under his care until the time of the trial. In December, 1981 Shawn was seen by Dr. Randolph Harper, a psychologist, and was treated by him from February, 1983 until trial time. Shawn’s parents are entitled to recover for past and future medical expenses and Shawn is entitled to recover for future medical expenses, loss of earning capacity and pain and suffering, permanent disability and disfigurement.
The record establishes that past medical expenses approximate $30,000. Future medical expenses will be incurred for revision of scar tissue especially during Shawn’s growth years. This is so because as the child grows and his legs lengthen the scar tissue remains the same with the result that his toes are pulled upward necessitating surgical adjustments of the toes along with revision of the scars. Dr. Howes stated that Shawn would require “many” surgical procedures in the future to deal with these “contractures” and to provide cosmetic improvement of Shawn’s scars. He will require medicated creams for itching for the rest of his life. He will *844 also require psychotherapy at least until he reaches maturity and probably beyond.
The record is not clear as to an exact amount of future medical expenses Shawn will incur but it is clear that his parents are facing substantial bills until Shawn reaches maturity. We know that he has already incurred $30,000 of medical expenses which includes about $10,000 at Charity Hospital. We also know that medical costs continue to rise even beyond the increase in cost of living. Since we are performing a function normally performed by the trier of fact we will exercise the discretion which is normally allocated to the fact finder by LSA-C.C. art. 1999 and fix future medical expenses to be awarded to Shawn’s parents at $50,-000. Thus, Mr. and Mrs. Toups are entitled to recover $80,000.
Although Shawn is entitled to something for future medical expenses there is little in the record to show how much should be awarded. Once he finishes growing the contracture problem will end, but his scars will require revision for the rest of his life according to Dr. Howes. He will also require medicated cream for itching. Evidence of loss of earning capacity likewise does not support a specific figure. Because of extensive scars on his face, arms and legs, Shawn will be excluded from physical labor and from fields in which physical appearance is an important ingredient among the job requirements. On the other hand he has the IQ to finish college and should be able to hold a sedentary job. Again in the exercise of the discretion normally allocated to the trier of fact by C.C. art. 1999 we will include something in the general verdict for these elements of damages.
The record supports a substantial award for pain and suffering and disfigurement. This child endured agony during the de-bridement procedure at Charity Hospital and was subjected to skin graft surgery four times there. He was under constant treatment to ward off infection and to prevent dehydration and was in constant pain. When Dr. Howes saw him for the first time a few months after his initial hospitalization Shawn was wearing a Jobst mask which covered his entire face except for the eyes, nostrils and mouth and stockings on his arms and legs so that skin grafts could be kept in place. Dr. Howes estimated that 50 per-cent of his body was covered by hypertrophic or thick, overgrown scars. The skin grafts were in patterns of small diamond shapes so that they had the appearance of mesh. Added to the unsightly appearance of the burn sites now covered with these grafts were the donor sites on his abdomen which appeared as raised scars. These donor sites were painful and can itch for years. Dr. Howes performed seven operations on Shawn between March, 1978 and July, 1981 and anticipated “many” surgeries in the future.
The record contains numerous excellent photographs which speak for themselves. In addition, we had the unique opportunity to view this child during oral argument since his body was placed in evidence as an exhibit. These observations along with the testimony of Drs. Howes and Harper convince us that this child is left with disfiguring scars which have already caused and for the rest of his life will cause him psychological stress along with physical pain, itching, limitation of motion, permanent disability, and mental anguish. His life has been shattered by this accident.
We are aware that Shawn is a bright, active youngster who runs, plays soccer, and swims and with psychological and medical care he may overcome the handicaps he has from the accident and lead a reasonably successful life. But these factors do not overcome or offset the difficulties he has faced and will face in the future. We have concluded that One Million, Eight Hundred Thousand Dollars (1,800,000.00) will fairly compensate him for his damages.
Accordingly, there is judgment in favor of Emerza S. Toups and Richard S. Toups, Sr. individually in the sum of Eighty Thousand Dollars ($80,000.00) and in favor of Emerza S. Toups and Richard S. Toups, Sr. as administrators and natural tutors of their minor son Shawn M. Toups in the sum of One Million, Eight Hundred Thousand Dollars, ($1,800,000.00) all with legal inter *845 est from date of judicial demand until paid and all costs of these proceedings.
JUDGMENT RENDERED.